So, let's start with Clientron, I believe. All right, I am not even going to try. You go ahead and tell me how to pronounce your last name. It's perfectly all right, Your Honor. It's John Van Lobansels. Okay, excellent. And before we begin, you'd like to reserve some time, I'm sure. Yes, Your Honor. Please, five minutes for rebuttal. Good morning, Your Honors, and may it please the Court. As I said, my name is John Van Lobansels, and I represent appellant Clientron Corporation. As the Court knows from the party's papers, this appeal concerns the trial court's indefensible refusal to pierce the Devon IT corporate veil as to both of the company's shareholders, defendant John Bennett and his wife, Nance DeRocco. Here, the trial court's decision to... So, what rule would you have us adopt in order to extend the discovery sanction to Ms. DeRocco? Well, I wouldn't necessarily say that the discovery sanction should reach her. I think the decision to pierce the corporate veil and demerit should reach her. Certainly, the judge below, the trial court below, found that Ms. DeRocco was not participating in discovery and so struck her objections to our interrogatories and requests for production. So, she was admittedly to a lesser extent responsible for the discovery misconduct in the case. However, it is our view that she is equally responsible for the conduct of defendant Bennett through the actions of Devon IT because she made the deliberate decision to hold Devon IT along with all of... substantially all of the couple's personal property as tenants by the entireties and coupled that with the decision that she would remain ignorant regarding the actions of her husband in running not just Devon IT, but all the company, all the couple's businesses. So, when you put those two factors together, we believe... You get to the merits. Yes. We think that we... Well, first of all, we think that that shows that she has a level of culpability for the misconduct of her husband. But we believe that applicable Pennsylvania and Third Circuit law is that we don't have to show that she's culpable in order to pierce the corporate veil. There's no case that says that we do. The trial court and the defendants haven't cited to any such case. That's correct. That's correct. Right. And I think, Your Honor, respectfully, that's a distinction that the trial court made we believe incorrectly. In this case, the evidence was that at least a net transfer of some $24 million went from Devon IT to other Devon entities that the defendants also owned. How is that violative of any law? And what inference are we to draw from that? Well, there's no business justification for the transfer of those funds from Devon IT to the other companies that the defendants owned completely. So do you want us, counsel, to send it back to Judge Bailson and have a redo on the merits? Or do you want that plus, and I think I understand this, do you want some adverse inferences to be brought into play? Well, I think, Your Honor, that's a good question. Actually, there are two related points to answer your question. First is we believe an adverse inference had to be assessed in this case against the defendants. But he didn't do that. He did not do that, but we think he had to do it. And didn't you get a better result than the adverse inference? No. Is piercing the corporate veil a better result? Not if it's not pierced as to both shareholders. Because in this case, we cannot reach the assets of the couple unless the judgment is against both shareholders. So the principal relief you're asking for here is that we find error and that the piercing of the corporate veil should have been as to both Duraco and Bennett. Precisely so. Precisely so. So if I understand you correctly, you're saying that Judge Bailson was misplaced in assessing the single-shot sanctions against the husband. That's right. And that what he should have done, it seems like your view is, what he should have done is not assess the sanctions, but the relief should have been to raise those adverse inferences and the merits determination when he did the piercing analysis. That's exactly right because on those individual factors, and you can see that in his memorandum decision denying our motion to amend judgment, he went through on sort of a factor-by-factor basis and criticized Clientron showing a trial regarding, for instance, the sufficiency of the documents regarding some of the subject self-dealing transactions that we talked about here. Now the reason that we didn't have those documents in that testimony was known to Judge Bailson, but it was because the defendant simply refused to produce those documents in response to our requests and in response to his orders compelling production, compelling the presentation of a 30B6 witness to testify on behalf of the company, for instance, regarding whether there was a legitimate business basis for the net transfer of that money, whether, in fact, the $3.5 million loan to shareholders took place, and if so, where that money went or what purpose it served. Well, I have two questions. Don't you have to show in the first instance that Devin IT is a sham corporation, and if that's so, then what is the evidence in the record that the $3.5 million is either improper or fraudulent? Well, there's two pieces of evidence related to that. Well, first of all, you have the tax returns of Devin IT, which showed the loan to shareholders, and then you have the simultaneous admission from Devin IT and from its counsel on appeal that Devin IT was insolvent. So if Devin IT is insolvent, it can't be giving millions of dollars as loans to its shareholders. And in addition to that, the way that this company – Is there no evidence in the record that money went personally to either Bennett or Doraka? Well, that's what Judge Bailson found, but again, in our view, Your Honor, if the money goes to another company that the Bennett's own completely, it's the same thing. It's a distinction without a difference, particularly where our expert testified that the Bennett's were using corporate funds to pay their personal American Express cards, for instance. So those charges were personal charges, so we showed commingling of assets there. That's not as to Devin IT. It is as – well, it is as to Devin IT because the Bennett's were using their corporations, the companies they owned, whether it was Devin IT or one of the other Devin entities, to pay their personal charges. So they were treating those companies that received the transfers as their personal accounts. You said there was no evidence of that. There was nothing in the record showing that there was actually commingling and that you had, in fact, shown that the 3.5 million loan that was here in the ledger, that that loan was actually made. But given our standard of review of fact-finding, how can we, on the basis of your objection to that, revisit the overall determination of Judge Bailson? Well, I think mainly, Your Honor, first of all, there was evidence that it took place. They have their own tax returns that showed that it took place. What the judge said in his ruling was we didn't prove that that money went into one of their personal accounts, which is, in our view, not required. If we can show that the money went to their personal benefit, which we believe we did. But to the extent that we were lacking that evidence to put on regarding those specific fact-findings, the reason that we didn't have it, the exclusive reason we didn't have it, is because those documents and that evidence were uniquely in the control of the defendants. Can you tell us specifically what was not produced? Because while you may have had to go back to the judge more often than you should have, and this report had to get involved more than we'd like to see, it appears that eventually you produced tax returns, general ledger, bank records. What documents were not produced? Well, sure. Your basis for adverse inferences on the loan, on people doing transfers, on communing benefits. Right. They didn't produce documents regarding the disposition of the settlement funds that were received from IBM, regarding the settlement funds received from Dell, which were in the millions of dollars, and those are the monies that were directly due to my clients. And we went through in our opening papers and I think laid out a chart that set out the specific requests that we had made that we moved to compel on and that the judge granted us relief on, but we didn't ultimately get those documents, which is why he entered sanctions against Dr. Bennett in the first place. Do we need to see your adverse inferences against your offer? Do we need to see discovery by the court to look at the adverse inferences, if that means backbinding on the community? I believe the answer to that question is no, Your Honor. There is a recent case that Your Honor actually participated in, United States v. Bogart, where the court found that the United States could reach the assets of the couple that was held as joint tenants by tenants by the entirety, despite the fact that there was no fault shown regarding the wife. It was a legal obligation only of the husband, and what was important in that case was that there would be an injustice served if the couple was allowed to benefit by the tenants by the entirety form, and that was what was important there, and the court didn't require any showing by the United States that she had done anything wrong because the liability was only the husband. I think that's my time for now. Thank you. Thank you. Counsel. Good morning. Good morning. Good morning. I'm Gary Sams on behalf of, or of Obermeyer, Redmond, Maxwell, and Hipple on behalf of the Appalese in this case, and I'd like to have the opportunity to address some of the same questions that was asked by the panel, but I'd like to just start with a few things. Well, let me ask you this question. The judgment against your client, Bennett, does not reference the $6.9 million arbitration award. That's correct. And there's no reasoning in the record as to why it was excluded. Are we obligated to remand on that basis so that the district court can make clear whether its intention was to exclude it and why? No, sir. I believe if you read Judge Bailson's opinion, he clearly sets forth why he makes the sanction as to the $745,000 roughly and then the $44,000. The $6.9 is actually an arbitration award that had occurred in China two years before and which just came here for enforcement purposes. Was it not before him? It was not before him for consideration? Only to see as to whether or not it could be validly enforced. Well, I think the conclusion is, and you can talk about the validity of Basin from the third sentence, the discovery sentence, but the conclusion is that it's warranted first over bail. Why would there be corporate bail given as to one judgment and not the other? I mean, isn't the conclusion that this is a jammed corporation? And so whatever the judgment is, you reach intended to it in general? Well, I think you have to look at what the violations were that were actually deemed to be sanctionable by the court. Contrary to the aggressive and flowery language of the appellants, we're talking about a situation where Dr. Bennett was sanctioned for essentially two reasons. The first being that when he got interrogatories and requests for production of documents, he was told to search for materials. At his deposition, he testified that, I looked in my desk and in my house and I directed my staff to look elsewhere for the files and materials. The court was affronted by the fact that Dr. Bennett had given that responsibility to others to look for his materials. But there's more than that, isn't there, counsel? I mean, he, if I understand it correctly, played fast and loose during depositions. He gave answers that were incredible under the circumstances. It's quite clear that that affected Judge Bailson's determination. It certainly did, Your Honor. And so following that, because this is such, as it turns out, an ineffectual sanction under the rule, why not plug in to the merits analysis on piercing what amounts to spoliation, not producing these documents? Why isn't that fair? Because, first of all, there is no spoliation. And as Judge Krause appropriately pointed out, counsel didn't anywhere in his brief say, this is the document we didn't have. Our expert could not write a report because we were missing this specific financial document. In fact, they had the ledgers, they had all the personal bank accounts, the bank accounts of all the other corporations. They had mountains of documents, how it turned out. Perhaps what's being claimed is a constructive sort of spoliation. You say, though, your argument is even if you plug that in, it doesn't get the appellant where they need to go. I still don't know, as I stand here before the Court, what financial additional documents they think they didn't get. Well, the district court did make a finding that they didn't comply with producing the 30B6 witness, didn't produce full bank records. Their expert testified that he couldn't conclude whether the $3.5 million loan was made or not, because complete records hadn't been produced. If I may address that, the 30B6 witness was not produced as we were, and we had many phone conferences with the Court over this. And at one time the Court said, well, if they don't have anybody, I can understand they don't have any people. Leave the company. And you can't put the burden to teach somebody what you think it was. You have to address the situation and just look at everything in context. But the judge later changed his mind on that because of the deposition behavior of my client. The judge did not like my client. My client acted rude and inappropriate at his deposition. But that is not enough, quite frankly, to take away and apply the sanctions to his wife. Thank you for raising that, Your Honor. This is not our burden. As the judge said in his opinion, the burden has always been theirs to prove the merits of their case. But you know the whole purpose of a 30B6 is so the corporation produces somebody. And if the takeaway from this is that you can play hide the ball, because you say that nobody is armed with the information, are sanctions enough? I mean, doesn't that fit properly within the court's analysis or a merits analysis? And if it's not spoliation, quite frankly, what is it? I mean, you don't have what you need to do the analysis. Where does that fit? It does not, Your Honor. If I may go back again. What did counsel tell you he didn't get that he needed in papers or here before you? So that is, quite frankly, a red herring. Well, with respect to the fact that their expert couldn't make calculations. Absolutely. And Your Honor, to answer I think both of your questions, hopefully the 30B6 witness was a very strange situation. We had, we were on our third CFO since the time. But they did get, and which we offered to designate for certain portions, Joe McCoy, the president of Devon IT, who testified as to what he did. Dr. Bennett, okay, the president. And they had any number of witnesses that they could have called or subpoenaed for deposition that they did not. We simply, honestly, did not have anybody who could testify as to everything they wanted in that 30B6. How could any representation that your client made to the court be taken seriously? Because you're saying, what did they not get that they needed? Well, the whole purpose of a 30B6 witness is to say exactly what's there. And when you know exactly what's there, then you can direct your discovery to fill the gaps. I mean, that's the whole point. I appreciate that, Your Honor. And when I say they got, I'm talking about the documents, specific 30B6 witnesses of a witness. We didn't have anybody there at the time who was quite frankly capable. I wouldn't do a disservice to the court and have my client testify when he doesn't know. That would have been more inappropriate, I would submit. You put the onus on the appellant to essentially identify what they didn't get. But if you don't produce a credible, competent 30B6 witness or any deponents, why is that fair under the circumstances? How do they know what they didn't get when they don't know what exists? Well, I think they know everything that exists based on the questions they ask and all the normal bank records you have in business dealings. They had all the bank statements. They had the ledgers. They had all the background information we could find. They got everything that we had. There was no hiding the ball here. The main problem here with the problems with discovery is my client is not a likable man, period. Okay? He is not polite. That's not a particularly effective argument. No, I'm trying to put everything in the proper context. It's not an excuse. I'm trying to put everything in the context because, again, if there really were documents, and I'm not trying to shift any burden, that they knew exist or exist in the regular business course that would have helped or they could expect to be present, they didn't cite any of those. Counsel, if your argument boils down to there was no one who could serve as a 30B6 witness, if no one knows where corporate records are, and we couldn't produce documents because those kinds of documents either don't exist or we don't know where to find them, why doesn't that just conclusively show we do not have corporate form to justify fishing over there? I don't want to confuse that because perhaps if I gave you the wrong impression, I'm sorry, Your Honor. I'm not saying they didn't get all the documents, okay, with respect. You're trying to say that we didn't have a 30B6 witness to address all the documents. There were certain financial questions that they identified we could not produce a 30B6 for, but every financial document that we had that we could put our hands on was produced. But this is all, quite frankly, the 30B6, okay, violation. The judge found a sanction as a result of the discovery, but there's no way it should get to certainly Mrs. Duraco, okay, who, as the judge said, said there is no evidence indicating she did anything wrong. Now, what's the basis in Pennsylvania law for treating them differently since they're tenants by the entirety? It has always been that way in Pennsylvania. For instance, as you know, it's different in Jersey. If you get a judgment against one, you can enforce that judgment in Pennsylvania. It has long been held that you cannot violate just because you get a judgment against one does not make it applicable towards the other. But if you pierce, if Judge Bailson had decided that he wanted to pierce rather than sanction, pierce on the merits, I should say, which he didn't, obviously, and he sanctioned, wouldn't it have been appropriate to pierce then as to both husband and wife? Absolutely not. Why not? If you're piercing on the merits, you're finding against that person, saying that that person was dominant as Judge Krause indicated. But doesn't it open it up against them? But there's plenty of evidence that this was run like a business. We had different offices. I'm not asking that question. I'm saying if he decides he's going to pierce on the merits, doesn't it open it up as to all shareholders? If he thinks he can pierce as to both, because you're now imposing individual liability on them. He can make that call. He can impose individual liability on her when she's done nothing wrong. No. The question is slightly different. I'm sorry if I'm not getting it, Your Honor. The question is, let's suppose for a moment that he pierced on the merits, not as a discovery sanction. What is the basis in law to treat Dorotko differently than Bennett since they're tenants by the entirety? It's not 50-50. They both own the entirety. I understand, and I apologize, Your Honor. It is now you're imposing individual liability, and it's not appropriate to do it. If you want to pierce the corporate bail on the merits, then you're going to be doing it. Based on what? Where are we looking to for this? I apologize. I have no site to provide you, Your Honor. That's your entire case, right? No, I disagree. Well, look, the relief that he wants the most today, right, is that the discovery sanction be extended to both Bennett and Dorotko, right? That's what he wants the most. He said it in his papers. He said it here today. So that means that for you to be an effective advocate, right, you've got to have an answer to that, and you're telling me you have no answer to that based in law. He asked, I think, that on the merits it be placed against her. I know of no case law that allows for that to happen either. Correct. Well, if I may, Your Honor. Well, if I may, Your Honor. I think this is a problem, particularly with the way the papers were submitted in comparison with the record. The judge never found that any money was siphoned off, okay, by John Bennett or Nance Dorotko. In fact, their expert never testified. They write in their papers that Are you referring to the IBM settlement? Yes. In the IBM settlement, that was $13.5 million that was reached, Your Honor. That was some litigation against IBM where they had to have a funder because they didn't have the funds to bring the litigation. Under the funder's agreement, they had a factorial where they got four times what they gave. I'm trying to explain where the money went, Your Honor. That's not correct, Your Honor. Barry Mulhern, the general counsel, testified, and we provided the settlement papers as to where that money went. Of that $13.5 million, $6.5 million went to the funder, Burford. $4.1 million went into a court escrow. $1.1 million was paid to vendors. The rest was used by Devinad Tech and Devin IT. Devinad Tech was also a plaintiff and an appropriate recipient to run the operations of their business. No money, no $8 million was hidden or taken there. Because the bail piercing here was done in context purportedly of imposing the discovery sanction. That's correct. What authority is there? What precedent supports the idea under Rule 37 of piercing a corporate bail if, in fact, the factors are not satisfied under state law for piercing a corporate bail? I'm sorry, Your Honor, I'm not sure I understand the question. Perhaps I missed something. You're asking me why they shouldn't be able to pierce the corporate bail? Given that the district court pierced the corporate bail as a federal discovery sanction, if that was improper as a matter of law, if that is not a proper exercise of Rule 37, then there needs to be some further action, right? Reversing, perhaps remanding or remitting, whether piercing of a corporate bail should be done on notice applying the appropriate factors. And again, I hope I understand what you're saying, Your Honor. Forgive me if I'm not. I believe what you're saying is that we're not saying the judge inappropriately ordered the sanction. Okay? The judge made the decision for the sanction, and that's appropriate, and Judge Bailson has that right. How is it appropriate under Rule 37? What authority is there for piercing the corporate bail as a Rule 37 sanction when the district court successfully found that the factors for piercing the corporate bail under state law are not satisfied? Whether that was right or wrong for the district court to reach that conclusion and then nonetheless pierce the corporate bail under Rule 37. What authority is there for that? Well, I think as Judge Bailson cites in his opinion, he has the authority to sanction them by piercing the corporate bail for their actions. The cases that the district court cited are adverse inference cases. Those are cases where the district courts drew an adverse inference on the facts that supported the factors for bail piercing. That's not what the district court was doing. Are they inclined to draw adverse inferences on one of the pieces of evidence that suggested that there might be something, that there might be a problem? Well, I guess I'm not aware of any specific case other than the case law, Your Honor, that goes through the multifactorial test that we have in Pennsylvania. And that's one of the things that this court should be aware of is appellants in their briefs want you to focus on the Erdman case in Seventh Circuit Law and Eighth Circuit Law instead of doing an analysis on the merits as to what happens in Pennsylvania under our test. Well, let me ask you, let me ask you this question. You said that Benet and Duraco should be treated differently and that the sanction as it was levied was appropriate in the sense that there was a separation between the two. Correct. And the question that I have for you is if in the record at, I think, Appendix 924 and 925, Duraco is asked about this supposed proxy. Now, proxy is not the word she uses. The word she uses is that Benet had, quote, unfettered discretion, right? And one of the questions that was asked was, have you seen him sign your name? And she says, yeah, I'm not sure. I've seen him do it, but if he did it, it'd be fine with me, right? So when there is that type of unfettered discretion, right, and there is a tenant by the entirety, I'm still struggling to understand why your adversary isn't correct. Why shouldn't they be treated the same? Just as in every corporate setting, if you take a step back, somebody's got to make the decision, somebody's got to do the action. There are silent partners in all types of structures and formations. So you can be willfully blind and not suffer the consequences? No, and there's no evidence that's ever been submitted that she was willfully blind. That's a little different than deciding to allow somebody to make decisions and business decisions for you. Nance Duraco does not have the education or the experience that Dr. Benet did, for instance. So she deferred to him, but that doesn't mean that she automatically has a level of accountability if she does nothing wrong. We're over time, but I have to ask this question to follow up on Judge Cross's question. Yes, please. If this Court finds that the Rule 37 sanction, the piercing, which after carefully looking at the factors under Pennsylvania law, he doesn't pierce and then he goes into sanctions and he levies a sanction, and I think arguably there may not be, at least arguably, authority for it, and if this Court finds that that was an inappropriate sanction under Rule 37, what do we do then? If that is an inappropriate sanction, you decide it's an inappropriate sanction and that's it. That's the end of the case. You don't send it back? No. The judge had all the information. He took the knowledge. Yes, he writes his opinion. He's very thoughtful and knowledgeable, and he said it during hearings with us. I realize that if I take action, this might not provide them the relief that they want, but that's not his job to provide them the relief they want. It's to sanction the behavior. He sanctioned the person and the company, and if the company had turned around or didn't, you know, there's always that sanction, or that penalty is still there, and they'll suffer the ramifications. But it doesn't mean, if it doesn't give them the relief that they seek, that innocent people, quite frankly, should be held accountable for it.  Thank you. Thank you, Your Honor. All right, thank you very much. All right, Your Honors. I tried to keep track of a couple of points there. First of all, Mr. Sands said there was no spoliation, that district courts specifically found otherwise, and the spoliation in this case specifically was Dr. Bennett deleting emails, substantive emails related to the case. That was part of the basis for his sanction. Are you saying he didn't use that in his analysis, his piercing analysis, that he made that sort of portable and moved it over into the sanctions determination? That's correct. Yes, that's correct. You wanted to plug it in. You should plug it in. Into the merits analysis. That's exactly right. Let me ask you again, because I don't want there to be confusion. Do you want us to analyze the sanctions, or are you solely on the merits, as it were, of the piercing under the Pence manufacturers? Well, we didn't actually look at whether or not the sanction was legitimate because the defendants didn't appeal that aspect, and so we weren't looking to uphold it, so we didn't brief it. But I can tell you that when we were seeking veil piercing in the underlying case, we did file papers and cited authority for the proposition that when you have systematic discovery misconduct like this, veil piercing is an available remedy. And I apologize that I don't have those cases available, although we briefed them in the underlying sanctions motion. We would prefer, obviously, that the court be mindful, that the trial court be mindful of the realities of the discovery situation because, as Your Honors were pointing out, they failed to designate a 30B6 witness on the very financial transactions that we had the burden of showing were shams. You know, when the judge denied our summer judgment motion, on page 17 of our opening brief, we pointed out the six specific questions that he wanted the trial to focus on, and one of those was on the net transfer of $24 million, and was there a business justification for that. We couldn't put on testimony about Devin IT's business justification because, according to counsel, they had nobody there who knew anything about it. Well, that means there's no business justification for it, and that's what our expert did testify to, but to the extent we didn't have more information about that and where exactly the money went and why, it was precisely because they didn't present a witness on that subject, which they couldn't do and was sanctionable for them to do. You said yourself that the higher courts, that you're asking us to look at this as a discovery sanction, and as a discovery sanction, in effect, the district court was doing this area of judgment, which 437 does provide, right? But to do that as a discovery sanction, you then would need to show a particular discovery violation, if I do not know, right? On the merits of a different story, looking at the factors for failures. Well, I didn't want to do anything to make it harder on myself, so certainly. I'm not looking to do that, and to answer one of the court's previous questions, we don't believe there is a basis under Pennsylvania law to treat Ms. Duracko differently once the veil piercing is reached. Once you decide to do that, there's not a basis under Pennsylvania law. The defendants didn't cite one, the court below didn't cite one, and there isn't a basis for doing that. Right. That's right. You're exactly right. That's exactly right as well. That's what we are seeking is for a remand so that the district court could consider the factors in light of the discovery conduct. So in addition to the fact that he didn't take those matters into account, there's no indication in his memorandum denying our motion to amend judgment that he considered the factors together. He viewed each one in isolation. For instance, he said that, yes, they failed to abide by corporate formalities, but that by itself is not reason to pierce the corporate veil. I assume you believe that it's an easier path to Ms. Duracko when you do the factors test and you do it on the merits than it is on the discovery sanctions. Is that fair? That's correct. That's why you want to do it that way. That's right. Is that fair? Right. Well, I mean, the whole point, Your Honors, is that veil piercing is an equitable remedy. And when you pierce the corporate veil as to a bankrupt defendant who has no assets and the other defendant, the corporate defendant, is insolvent, you've not done any equity. You haven't done anything for us. So veil piercing as to Bennett alone, not only is there no legal justification for it, but it doesn't do equity, which is the whole point of veil piercing. And in this case, we believe that we should, to the extent that we have to, under all the factors that the parties agree the court had to consider, that veil piercing had to take place here. And if Your Honors have no further questions, that's all I have. Thank you. All right. Thank you very much. Thank you, counsel, for your arguments. We will take the matter under advisement.